IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| American Petroleum Institute,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>U.S. Energy Resources LLC; Ami Vyas:<br>　　　Tiku Vyas; Samir Lachine; Babylon<br>　　　Trading & Developing Inc.; Arlando<br>　　　Yaldoo; and Johnny Yaldoo,<br><br>　　　　Defendants. | The Honorable<br><br>Civil Action No. _____ |

**COMPLAINT**

As its Complaint in this action, Plaintiff American Petroleum Institute ("API"), by its undersigned attorneys, alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

**<u>NATURE OF THE CASE</u>**

1.　　　This is an action for trademark infringement, counterfeiting, trademark dilution, false advertising, and unfair competition, under federal, state, and/or common law.  API brings this action because Defendants, individually and in association with each other and/or third parties, have without authorization manufactured, distributed, transported, and/or sold motor oil bearing copies or imitations of API's certification marks and/or trademarks, and have falsely stated that the motor oil meets certain API standards.

2.　　　No legitimate reason exists for Defendants' unauthorized use of API's certification marks and/or trademarks.  Defendants are not currently licensed by API to use its certification marks.  Despite the absence of a license, Defendants have offered, sold, transported and

distributed motor oil bearing copies or imitations of API's certification marks and trademarks

with full knowledge of and reckless disregard for API's rights and with the intention of deceiving

the public; and unfairly trading on the goodwill of API and its marks.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to

15 U.S.C. §§ 1114, 1116, 1121, and 1125(a) and 28 U.S.C. §§ 1331, 1332, 1338(a), 1338(b), and

1367.  This matter in controversy exceeds the sum or value of $75,000, exclusive of attorneys'

fees and costs.

4.      API's claims arise in part in this District as well as in various other states and

areas where Defendants have offered, sold, transported, and/or distributed products bearing

marks, names, and license numbers that violate API's rights.  Upon information and belief,

Defendants have a place of business and/or reside, and/or transact business in this District.

Venue is accordingly proper pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

5.      Plaintiff API is a District of Columbia corporation, with a business address at

1220 L Street, N.W., Washington, D.C. 20005.  API is the nation's leading trade association for

the petroleum and natural gas industry.

6.      Defendant U.S. Energy Resources LLC ("U.S. Energy") is a Michigan limited

liability company, organized in 2008, with a registered office at 20300 Mt. Elliott Street, Detroit,

Michigan 48234.  U.S. Energy is in the business of recycling oil and marketing products of

recycled oil, including but not limited to lubricants and engine oils.

7.      Defendant Ami S. Vyas ("Ami") is an individual with a mailing address at P.O.

Box 1432, Birmingham, Michigan 48012-1432.  Ami is a registered agent for Defendant U.S.

Energy and is also listed as the President.

8.      Defendant Tiku Vyas, also known as Chirag Vyas, ("Tiku") is an individual with a business address at 20300 Mt. Elliott Street, Detroit, Michigan 48234.  Tiku is the Chief Marketing Officer (CMO) at U.S. Energy.

9.      Defendant Samir I. Lachine ("Lachine") is an individual with an address at 37000 Woodward Ave, Suite 101, Bloomfield Hills, Michigan 48304.  Lachine is a registered agent for U.S. Energy and is also identified as the Chief Financial Officer (CFO) at U.S. Energy.

10.      Defendant Babylon Trading and Developing Inc. ("Babylon Trading") is a Michigan corporation incorporated on April 7, 2010 with a business address of 11566 East 9 Mile Road, Warren, Michigan 48089-2595.  Babylon Trading is in the business of marketing engine oils.

11.      Defendant Arlando Yaldoo ("Arlando") is an individual with a business address at 11566 East 9 Mile Road, Warren, Michigan 48089-2595.  Arlando is an incorporator, president, and registered agent of Babylon.

12.      Defendant Johnny Yaldoo ("Johnny") is an individual with a business address at 11566 East 9 Mile Road, Warren, Michigan 48089-2595.  Johnny is an incorporator of Babylon.

## API AND ITS CERTIFICATION MARKS

13.      API is the leading trade association for the petroleum and natural gas industry in the United States.  API was established to afford a means of cooperation between the industry and the government in all matters of national concern, foster foreign, and domestic trade in American petroleum products, promote the interests of the petroleum industry, and promote the improvement of its members, and the study of the arts and sciences connected with the oil and gas industry.

14.      For more than ninety years, API has used the trademarks and trade names AMERICAN PETROLEUM INSTITUTE and API, together with its certification marks, for a

wide variety of products, services, and programs aimed at the promotion, development, and improvement of the petroleum and natural gas industry.

15.     Since 1947, API has published engine oil standards for automotive and heavy-duty diesel engines.  API's engine oil standard, API 1509, is now in its 16th edition.

16.     Since approximately 1971, API recognized engine oil categories as outlined in API's updated and current "Motor Oil Guide," included as Exhibit A to this Complaint.

17.     Since 1985, API has operated a certification program for engine oils designed to define, certify, and monitor engine oil performance deemed necessary for satisfactory equipment life and performance by vehicle and engine manufacturers, as well as consumers.  API's *Engine Oil Licensing and Certification System* ("EOLCS") is a voluntary licensing and certification program that authorizes engine oil marketers that meet specified requirements to use the API Quality Marks.

18.     EOLCS licensed engine oils are tested on a variety of performance standards, as outlined in API's "Motor Oil Guide," included as Exhibit A to this Complaint.  Engine oils that meet the standards may be identifed by the performance standard designation developed by API, namely the "S__" designation.  Each advance in engine technology is reflected in a change of requirements and the second letter of the "S__" designation.  For example, the initial "SA" designation is designated as the necessary performance requirement by auto manufacturers for engines manufactured before 1930.  Between 2004 and October 2010, "SM" was designated as the necessary performance requirement by most manufacturers for all engines built prior to 2010. In October 2010, the designation became "SN."  Each designation is backward compatible with the previous designations, except for category SA, which did not include any additive chemicals

to reduce friction or clean the engine, and as a result, may not be compatible with all later

designations for some applications.

19.     API sets engine oil standards in an open, transparent process which includes all

interested parties, including oil companies, oil additive companies, and vehicle and engine

manufacturers.  The performance requirements and test methods referenced in API engine oil

standards are established by vehicle and engine manufacturers and technical societies and trade

associations such as the American Society for Testing and Materials (ASTM), Society for

Automotive Engineers (SAE), and American Chemistry Council (ACC).

20.     API licenses those who meet API's engine oil requirements to advertise this

compliance by affixing the following famous, registered certification mark to the containers for

their goods:



**API Certification Mark "Starburst"**

21.     The API Starburst is a federally registered certification mark (Reg. No.1864428)

used exclusively in connection with the certification of engine oils for motor vehicles in

International Class A.  A true and correct copy of this registration is attached as Exhibit B.

22.     API licenses those who meet API's engine oil requirements to advertise this

compliance by affixing the following famous registered certification mark to their goods:

Complaint
Page 5

 

**API Service Symbol "Donut"**

23.     The API Donut is a federally registered certification mark (Reg. Nos. 1868779 and 1872999) used exclusively in connection with the certification of engine oils for motor vehicles in International Class A.  True and correct copies of these registrations are attached as Exhibit C.

24.     Pursuant to 15 U.S.C. §1115(a), API's federal registrations identified above constitute *prima facie* evidence of API's exclusive nationwide ownership of those registered marks.  Moreover, all three registrations have become incontestable and thus constitute conclusive evidence of API's exclusive right to those registered marks.

25.     API also has common law rights in the following certification marks:

 

26.     Collectively, the registered and common law marks are herein referred to as the "API Certification Marks."

27.     Currently, approximately 530 entities are licensed to use the API Certification Marks and "SM" designation.  These licensees must submit to testing by API.  If an engine oil does not match the physical and chemical data on file with API, API works with the licensee to evaluate the nonconformity and takes appropriate corrective action.

Complaint
Page 6

28.     EOLCS is backed by an ongoing monitoring and enforcement program that
ensures licensees adhere to program requirements.  This includes running physical, chemical,
and performance tests on licensed engine oils and verifying that the API Certification Marks are
properly displayed on containers and convey accurate information to consumers.  API 1509
describes the program's requirements, explains the current engine oil standards, shows how the
API Certification Marks are to be used, and explains the monitoring and enforcement process.

29.     Manufacturers that can properly establish compliance with the API requirements
are licensed to display the API Certification Marks on containers and packages of motor oil sold
to the public.  Appropriately licensed API Certification Marks have appeared on hundreds of
millions of containers of engine oil sold over the years, and have become famous.

30.     API's EOLCS certification program and related API Certification Marks, are of
vital importance to engine oil manufacturers, marketers, and consumers.  An engine oil bearing
one or both of the API Certification Marks informs purchasers that the oil: (a) is interchangeable
or compatible with other engine oils, (b) has been formulated pursuant to recognized quality
management systems that are designed to ensure purity and reliability, and (c) meets industry
standards that are designed to ensure that engines perform in a safe, efficient, and appropriate
manner and thereby reduce the potential for engine damage and maximizes engine performance.
In short, end consumers rely on the API Certification Marks to be certain that the engine oil they
purchase will perform as intended in accordance with industry standards.

31.     Engine oils that do not meet API's requirements and that are not created and
bottled under API's approved/certified quality management systems may not be as reliable or
safe as engine oil that meets API's performance and quality standards.  The use of the API
Certification Marks on engine oil bottles containing engine oils that fail to meet API's

performance and quality requirements will mislead end users as to the quality and performance of the engine oil.  The use of such uncertified oil by unsuspecting end users could result in expensive engine damage or failure.

## WRONGFUL ACTS OF DEFENDANTS

**A.      The U.S. Energy Engine Oil**

32.      In early 2011, U.S. Energy sought to create a private label engine oil that it could sell under the brand name ENERGY OIL.

33.      In January 2011, using an Internet search, U.S. Energy found an engine oil bottling company operating under the name Spire Brands LLC ("Spire Brands") of Kingsbury, Indiana, owned and operated by Randy Wegner ("Wegner").  Spire Brands held itself out as bottling low end, top-off engine oil and made no claim to have API certified motor oil.

34.      Tiku, acting on behalf of U.S. Energy, contacted Wegner via e-mail to set up a meeting to discuss Spire Brands' bottling engine oil for U.S. Energy.  During the meeting Tiku and other U.S. Energy representatives told Wegner that they were looking for very inexpensive engine oil, pricing at $8 per case, far less than the cost to produce engine oil that would be API certified or comply with the requirements to use the API SM designation.

35.      After multiple meetings between Wegner and Tiku and other U.S. Energy representatives, Wegner arranged for U.S. Energy to meet with an oil supplier, Halon Oil, owned by Rodney Kaminga ("Kaminga").  U.S. Energy and Halon Oil entered into an oral agreement whereby Halon Oil would supply U.S. Energy with low-end engine oil at the low-end price range that U.S. Energy was seeking.  Halon Oil subsequently delivered the low-end oil to Spire Brands so the oil could be bottled under U.S. Energy's private brand, ENERGY OIL.

36.      The oil that Halon Oil supplied to Spire Brands for the U.S. Energy private label motor oil was not API certified and did not meet the requirements of API's SM designation.

Neither Spire Brands nor Halon represented to Tiku or U.S. Energy that the motor oil U.S. Energy purchased for its private label product was API certified or qualified for the SM designation.  In fact, U.S. Energy knew that the oil could not be API certified because U.S. Energy personnel had walked through Spire Brands' facilities and saw that Spire Brands did not have the necessary equipment to produce API-certified oil.

37.     U.S. Energy does not currently produce, and has never produced, an engine oil that is certified by API.  U.S. Energy has never been authorized to use the API Certification Marks and/or and "S__" designation on the labeling for its engine oils.

38.     Neither Spire Brands nor Halon Oil currently produces, and has ever produced, an engine oil that is certified by API.  Neither Spire Brands nor Halon Oil has ever been authorized to use the API Certification Marks on labeling for their engine oils.

39.     Tiku, Ami, Lachine, and U.S. Energy knew or should have known that the engine oil to be used in its private label product was not certified by API and did not meet the requirements for API's SM designation.

40.     As part of an oral agreement between U.S. Energy and Wegner/Spire Brands, U.S. Energy was to supply Spire Brands with bottles and labels to use in bottling the engine oil.

41.     Neither Wegner and Spire Brands, nor Kaminga and Halon Oil, were to design or have any input on the labels that U.S. Energy supplied to be used on the engine oil bottles.

42.     Despite the fact that the engine oil was not certified by API and did not meet API standard SM, U.S. Energy designed labels for its private label engine oil that falsely state or suggest that the product is API certified and meets API standard SM.  U.S. Energy intended to advertise, sell, distribute, and transport engine oil bearing this label in U.S. commerce and in commerce between the U.S. and foreign countries.

Complaint
Page 9

43.     The front label for the U.S. Energy motor oil shown in Exhibit D features a counterfeit imitation of API's Starburst certification mark (the "U.S. Energy Counterfeit Starburst"), marked with the wording "Fuel Efficient Formula SM."  The U.S. Energy Counterfeit Starburst is in exactly the location that genuine certification marks would be placed on genuine API certified engine oil.

44.     The back label for the U.S. Energy motor oil shown in Exhibit E features a counterfeit imitation of API's Donut certification marks (the "U.S. Energy Counterfeit Donut"), marked with the wording "Saves Fuel SM High Quality."  The U.S. Energy Counterfeit Donut is in exactly the location that genuine certification marks would be placed on genuine API-certified engine oil.

45.     The back label for the U.S. Energy oil shown in Exhibit E also falsely states in text that it "Meets API Services SM, SL, and C4 Plus."

46.     On or about February 18, 2011, ABC Printing company prepared proofs of the labels that U.S. Energy had supplied, as shown in Exhibits F and G, and sent them to Tiku via e-mail for approval.

47.     On or about February 23, 2011, Tiku e-mailed ABC Printing to approve the labels, which were then printed and picked up by Wegner on February 25, 2011 and taken to the Spire Brands facility.

48.     Spire Brands commenced filling the bottles with oil and labeling the bottles with the labels supplied by U.S. Energy on a Friday in early March.

49.     Spire brands bottled 216 four-liter bottles of 5W-20 engine oil, and labeled them with the labels shown in Exhibits F and G.

50.     Spire Brands and U.S. Energy had a disagreement and Spire Brands ceased bottling the engine oil for U.S. Energy.  Subsequently, U.S. Energy, Wegner, Spire Brands, Halon, and Kaminga all became involved in litigation that remains pending in the federal courts in Michigan and Indiana.

51.     In preparing his defense to U.S. Energy's allegations, Wegner contacted API and provided API with photographs of the labels that U.S. Energy had supplied to Spire Brands for its private label engine oil.

52.     API requested that Wegner provide samples of the U.S. Energy oil and labeling for further review.

53.     On April 13, 2011, Wegner provided API representative Anthony Filipello with a number of boxes of unused labels identical to Exhibits F and G that U.S. Energy had supplied for its private label oil, along with several bottles of labeled U.S. Energy oil that Wegner had filled before being told to cease the operations by Lachine.

54.     Subsequently, API sent the U.S. Energy bottles of oil that it obtained from Wegner to an independent laboratory for testing.  The testing revealed that the oil fell significantly short of the requirements for the API SM designation and could cause damage to late-model automobile engines that were designed to require SM-designated engine oil.

55.     U.S. Energy is currently marketing, or intends to market in the near future, a private label engine oil bearing labels that are identical to those in Exhibits F and G or that contain similarly false and misleading statements as to the motor oil being API certified and qualifying for the API SM designation.

**B.     The Babylon Trading Engine Oil**

56.     Babylon Trading, Arlando Yaldoo, and Johnny Yaldoo (collectively "Babylon") market private label engine oils under the RALLY'S brand, and possibly other brands, for export from the United States to Iraq and other locations overseas.

57.     Babylon also markets some of its private label RALLY'S engine oil, and possibly other brands, in the Detroit area.

58.     Babylon contracted with U.S. Energy to purchase and bottle oil for Babylon's private label RALLY'S brand oil.

59.     U.S. Energy subcontracted with Cedar Enterprises of Greenville, South Carolina to fill Babylon's order for the RALLY'S brand motor oil.

60.     Babylon does not currently produce, and has never produced, an API-certified engine oil.  Babylon has never been authorized to use the API Certification Marks in any manner.

61.     Neither Cedar Enterprises nor U.S. Energy currently produce, and neither has ever produced, an API-certified engine oil.  Neither Cedar Enterprises nor U.S. Energy has ever been authorized to use the API Certification Marks in any manner.

62.     Babylon knew or should have known that the engine oil to be used in its private label product was not API certified.

63.     Despite the fact that the oil was not certified by API, Babylon and/or U.S. Energy designed labels for its private label RALLY's engine oil that falsely state or suggest that the product is API certified.

64.     The front label for the Babylon RALLY'S oil shown in Exhibit H features a counterfeit imitation of API's Starburst certification mark (the "Babylon Counterfeit Starburst"), marked with the wording "AMERICAN PETROLEUM CERTIFIED--FOR GASOLINE

ENGINES." The Babylon Counterfeit Starburst is in the exact location that the API Starburst mark would be placed on genuine API certified engine oil.

65.     The back label for the Babylon RALLY'S oil shown in Exhibit I features a counterfeit imitation of API's Donut certification mark (the "Babylon Counterfeit Donut"), marked with the wording "API SERVICE CI—CONSERVING ENERGY." The Babylon Counterfeit Donut is in exactly the location that genuine certification marks would be placed on genuine API certified engine oil.

66.     The back label for the Babylon RALLY'S engine oil shown in Exhibit I also falsely states in text that it "Meets API Services SM, CI4, and CJ4."

67.     On or about January 13, 2011, Inline Label Co. of Middletown, Ohio delivered the labels shown in Exhibits H and I to Cedar Enterprises.

68.     U.S. Energy subsequently engaged Spire Brands and Halon Oil to complete the order for Babylon's RALLY'S private label oil with the low grade engine oil purchased by Spire Brands for U.S Energy in February 2011.

69.     U.S. Energy brought eight boxes of the labels shown in Exhibits H and I from Cedar Enterprises to Spire Brands and instructed Spire Brands to commence bottling the RALLY'S private label oil along with the U.S. Energy oil.

70.     Due to the dispute between Spire Brands and U.S. Energy, Spire Brands never bottled Babylon's RALLY'S private label engine oil.

71.     Had Spire Brands completed the bottling of Babylon's RALLY'S private label motor oil as originally instructed, the oil in the bottles would not have qualified for API's SM designation.

72.     Babylon is currently marketing, or intends to market in the near future, a private label engine oil bearing labels that are identical to those in Exhibits H and I or that contain similarly false and misleading statements as to the engine oil being API certified and qualifying for API's SM designation.

73.     On April 13, 2011, Wegner provided API representative Anthony Filipello with two of the unused RALLY'S private labels shown in Exhibits H and I that had been supplied by U.S. Energy.  Because Spire Brands could not complete the bottling of the private label RALLY'S motor oil, Babylon had Wegner give the remaining six boxes of unused RALLY'S labels to a different bottling company to complete the bottling project.

## INJURY TO API AND THE PUBLIC

74.     Defendants' use of the U.S. Energy Counterfeit Starburst, the Babylon Counterfeit Starburst, the U.S. Energy Counterfeit Donut, the Babylon Counterfeit Donut, and/or the unauthorized use of genuine API Certification Marks, along with their false suggestion that their products are API certified and qualify for API's SM designation, have irreparably injured and, if permitted to continue, will further irreparably injure API, its marks, the goodwill associated with its marks, and its reputation as the certifier of high-quality standards.

75.     Defendants' actions described above are likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods; are likely to falsely suggest a certification, connection, sponsorship, license, approval, and/or association of Defendant and Defendants' goods with API.

76.     Defendants' use of the U.S. Energy Counterfeit Starburst, the Babylon Counterfeit Starburst, the U.S. Energy Counterfeit Donut, the Babylon Counterfeit Donut, and/or the unauthorized use of genuine API Certification Marks, along with their false suggestion that its products are API certified and qualify for API's SM designation harm the public by causing

engine damage or failure, driver/passenger injury, increased numbers of motor vehicle accidents, and loss of property.

77.     API has no adequate remedy at law.

**FIRST CLAIM FOR RELIEF
TRADEMARK COUNTERFEITING UNDER
SECTIONS 32(a) AND 34(d) OF THE LANHAM ACT
<u>15 U.S.C. §§ 1114(a) AND 1116 (d)</u>**

78.     API repeats and realleges the allegations set forth in each of the paragraphs above.

79.     In their use of the U.S. Energy Counterfeit Starburst, the Babylon Counterfeit Starburst, the U.S. Energy Counterfeit Donut, and/or the Babylon Counterfeit Donut, Defendants, individually and collectively, have copied the API Certification Marks identified in this Complaint.

80.     The U.S. Energy Counterfeit Starburst, the Babylon Counterfeit Starburst, the U.S. Energy Counterfeit Donut, and/or the Babylon Counterfeit Donut are identical to or substantially indistinguishable from the registered genuine API Starburst and Donut.

81.     Defendants' willful and deliberate actions constitute counterfeiting of API's federally registered marks, in violation of Sections 32(a), and 34(d) of the Lanham Act, 15 U.S.C. §§ 1114(a), 1116(d), and 1127, and cause damage to API.

**SECOND CLAIM FOR RELIEF
TRADEMARK INFRINGEMENT UNDER
SECTION 32(1) OF THE LANHAM ACT
<u>15 U.S.C. § 1114 (1)</u>**

82.     API repeats and realleges the allegations set forth in each of the paragraphs above.

83.     Defendants' actions described above have caused, and are likely to cause, confusion, mistake, or deception of the public as to the source, certification, sponsorship, quality, and/or approval of Defendants' goods.

84.     Defendants' willful and deliberate actions constitute willful infringement of each of API's federally registered marks identified in this Complaint, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

### THIRD CLAIM FOR RELIEF
### FALSE ADVERTISING AND UNFAIR COMPETITION UNDER
### SECTION 43(A)(1)(A) OF THE LANHAM ACT
### 15 U.S.C. § 1125 (a)(1)(A)

85.     API repeats and realleges the allegations set forth in each of the paragraphs above.

86.     The aforesaid willful and deliberate acts of Defendants are likely to cause confusion, mistake, or deception as to the certification, origin, sponsorship, and/or approval of Defendants' goods with API, and thus constitute false advertising and false designations of origin in violation of Section 43(a)(1)(A) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(A).

### FOURTH CLAIM FOR RELIEF
### FALSE ADVERTISING AND UNFAIR COMPETITION UNDER
### SECTION 43(A)(1)(B) OF THE LANHAM ACT
### 15 U.S.C. § 1125 (a)(1)(B)

87.     API repeats and realleges the allegations set forth in each of the paragraphs above.

88.     The aforesaid willful and deliberate acts of Defendants misrepresent the nature, characteristics, or qualities of their goods and commercial activities, and thus constitute false advertising and false designations of origin in violation of Section 43(a)(1)(B) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a)(1)(B).

### FIFTH CLAIM FOR RELIEF
### TRADEMARK DILUTION
### UNDER SECTION 43(C) OF THE LANHAM ACT
### 15 U.S.C. § 1125 (c)

89.     API repeats and realleges the allegations set forth in each of the paragraphs above.

90.     Based on the inherent distinctiveness of the API Certification Marks; API's duration and extent of use of the marks; its duration and extent of advertising featuring the marks; the geographic areas in which it has sold, rendered, advertised, and/or certified goods and services featuring the marks; the amount and volume of sales under the marks; the degree of public recognition of the API Certification Marks; and the federal registration of the Starburst and Donut API Certification Marks, API's marks have become famous, as that term is used in Section 43(c) of the Lanham Act.

91.     The aforesaid willful and deliberate acts of Defendants, all occurring after the API Certification Marks became famous, are likely to dilute API's famous marks by creating an association between API and Defendants or Defendant's products that would impair the distinctiveness of API's Certification Marks in violation of Section 43(c) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(c).

92.     The aforesaid willful and deliberate acts of Defendants, all occurring after the API Certification Marks became famous, are likely to dilute API's famous marks by creating an association between API and Defendants and Defendants' products that is likely to harm API's reputation in violation of Section 43(c) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(c).

## SIXTH CLAIM FOR RELIEF
## TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION
## UNDER COMMON LAW

93.     API repeats and realleges the allegations set forth in each of the paragraphs above.

94.     Defendants are explicitly and implicitly passing off their products as being certified by API and/or made by authorized API licensees, thus causing injury to API's business and reputation.

95.     The aforesaid acts of Defendants constitute common law trademark infringement, passing-off, misappropriation of API's goodwill, and unfair competition in Michigan and other states where Defendants' offer, sell, distribute, and/or advertise their goods, including this District, thereby causing a likelihood of confusion in violation of the common law of Michigan, and laws of other states, by reason of which API has suffered, and will continue to suffer, irreparable and pecuniary injury.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT**
**UNDER MICH. COMP. LAWS §445.903**

96.     API repeats and realleges the allegations set forth in each of the paragraphs above.

97.     The aforesaid willful and deliberate acts of Defendants constitute unfair, unconscionable, and deceptive acts by causing a probability of confusion or misunderstanding as to the approval or certification of Defendants goods in violation of Michigan Consumer Protection Act. Mich. Comp. Laws §445.903, Sec. 3 (1)(a).

**PRAYER FOR RELIEF**

WHEREFORE, API prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief including, but not limited to, the following:

A.      A preliminary and permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, related companies, representatives, distributors, dealers, and all persons in active concert or participation with any of them from using in any form or manner the API Certification Marks, the name and mark American Petroleum Institute, the name and mark API, and any confusingly similar or dilutive marks or names, including but not limited to the U.S. Energy Counterfeit Starburst, the Babylon Counterfeit Starburst, the U.S. Energy Counterfeit Donut, and/or the Babylon Counterfeit Donut.

B.      A preliminary and permanent injunction enjoining Defendants, their officers, directors, employees, agents, subsidiaries, representatives, distributors, dealers, and all persons in active concert or participation with any of them, from taking any actions that falsely suggest that Defendants and/or Defendants' products are certified, licensed, or approved by API or otherwise meet any of API's standards or specifications, including but not limited to API's SM designation, or any other API "S__" designation.

C.      Awarding API monetary relief including damages sustained by API in an amount not yet determined but believed to be well in excess of Seventy-Five Thousand Dollars, pursuant to 17 U.S.C. § 1117(a)-(b) and Mich. Comp Laws §445.903, Sec. 11(2).

D.      Awarding API statutory damages of $1,000,000 per counterfeit mark per type of goods sold pursuant to 15 U.S.C.§ 1117(c)(2).

E.      Ordering the seizure of Defendants' counterfeit goods, counterfeit packaging, the means of making the counterfeit goods and marks, and records documenting the manufacture, sale, or receipt of things involved in such violation, all pursuant to 15 U.S.C. § 1116(d).

F.      Ordering the destruction of Defendants' name plates and/or goods bearing the API Certification Marks, the name and mark American Petroleum Institute, the name and mark API, any confusingly similar or dilutive marks or names, and any other indicia of API, and the means of making the counterfeit goods, pursuant to 15 U.S.C. § 1118.

G.      Ordering Defendants to immediately issue corrective advertising and immediately notify in writing each purchaser of counterfeit and/or infringing goods, advising them that Defendants' counterfeit and infringing products were not certified or licensed by API, that Defendants used the API Certification Marks, the name and mark American Petroleum Institute, the name and mark API, API's SM designation, and any confusingly similar or dilutive marks or

names without the authorization or knowledge of API, and that the motor oils do not meet the requirements of API's SM designation, or any other "S__" designation.

  H.   Awarding API treble damages pursuant to 15 U.S.C. § 1117.

  I.   Awarding API its attorneys' fees in this action pursuant to 15 U.S.C. § 1117 and other applicable laws.

  J.   Awarding API its pre- and post- judgment interest.

  K.   Awarding such other relief as this Court may deem appropriate.

          Respectfully submitted,

Dated:  November 4, 2011     /s Abraham Singer_____
             Abraham Singer (P23601)
             Pepper Hamilton LLP
             Suite 1800
             4000 Town Center
             Southfield, MI  48075-1505
             Tel:  248.359.7300
             Fax:  248.359.7700
             singera@pepperlaw.com

             *Of Counsel*
             B. Brett Heavner
             Margaret A. Esquenet
             Naresh Kilaru
             FINNEGAN, HENDERSON, FARABOW,
              GARRETT & DUNNER, L.L.P.
             901 New York Avenue, N.W.
             Washington, DC 20001
             Telephone: (202) 408-4000
             Facsimile:  (202) 408-4400

             *Attorneys for Plaintiff, American Petroleum*
             *Institute*